IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASMINE CHATMAN, individually and on behalf of all others similarly situated, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| ALLTRAN EDUCATION, INC., | ) ) ) |
| *Defendant*. | ) |

No. 17 CV 5370

Hon. Amy J. St. Eve

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Jasmine Chatman ("Plaintiff" or "Chatman") brings this purported class action against Defendant Alltran Education, Inc. ("Defendant" or "Alltran") alleging one count, a violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq*. (R. 7.) Plaintiff claims that Defendant failed to properly inform her of the amount of debt owed in violation of 15 U.S.C. § 1692g(a)(1). (*Id*. at 6.) Before the Court is Defendant's motion to dismiss Plaintiff's complaint. (R. 13.) For the following reasons, the Court grants Defendant's motion to dismiss.

### BACKGROUND

According to the First Amended Complaint,[1] Plaintiff Chatman is a resident of the state of Illinois. (R. 7 at ¶ 6.) Chatman incurred a debt in the form of a consumer student loan from Illinois State University. (R. 7 at ¶ 11; R. 8 at 7 ("Debt Letter"); R. 20 at 1.) She became

---

[1] The following facts are taken from the First Amended Complaint and are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *See Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016); *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

delinquent on her loan payments, her debt went into default, and Alltran was subsequently assigned the debt for collection. (R. 7 at ¶ 12-13.) Defendant Alltran is an Illinois corporation that holds a collection agency license from the state of Illinois and conducts business in Illinois as a debt collector. (R. 7 at ¶ 7-10.)

Alltran sent a letter to Chatman regarding her debt (the "Debt Letter"), dated December 19, 2016. (*Id*. at ¶ 14; Debt Letter.) The top right corner of the letter includes Alltran's contact information and the details related to Plaintiff's debt:

> Alltran Education Acct #: [REDACTED]
> Principle: [sic] $2250.00
> Interest: $136.76
> Collection Cost: $640.79
> Fees & Other Non-Collection Charges: $24.00
> Total Current Balance: $3051.55

(Debt Letter.) Twice the Debt Letter states that the "Amt Owed" or the "Amount Owed" is $3051.55. (*Id*.) The Debt Letter again provides Alltran's contact information, including the address and telephone number, in the body of the letter, in the signature block, and on the lower letterhead. (*Id*.) The bottom of the letter also reads: "The total balance due reflected above is correct as of the date of this letter. Until paid in full, interest may continue to accrue on your account. Please refer to the original loan documents for interest rate and accrual information." (*Id*.) The Debt Letter constitutes Alltran's initial communication with Chatman. (R. 7 at ¶ 16-17.)

Plaintiff's First Amended Complaint alleges one count, a violation of the FDCPA. (R. 7 at 6.) Chatman claims that the Debt Letter failed to properly inform her of the amount of debt owed in violation of 15 U.S.C. § 1692g(a)(1). (*Id*.) Plaintiff seeks statutory damages pursuant to 15 U.S.C. § 1692k(a)(2) as well as costs and attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3). (*Id*.) Before the Court is Defendant's motion to dismiss Chatman's complaint. (R. 13.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6)); *see also Hill v. Serv. Emp. Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Ibid*. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016); *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and "may be considered by the district court in ruling on the motion to dismiss…without converting [it] to a motion for summary judgment." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

## ANALYSIS

Chatman alleges that Alltran's Debt Letter violates § 1692g(a)(1) of the FDCPA. Section 1692g(a)(1) provides that a debt collector must provide a consumer "a written notice containing…the amount of the debt" either in its "initial communication with a consumer in connection with the collection of any debt" or "[w]ithin five days after the initial communication." 15 U.S.C. § 1692g(a). Specifically, Chatman asserts that the Debt Letter violates the FDCPA because it fails to properly inform her of the amount of debt owed as follows: 1) "Alltran failed to properly inform Plaintiff of how to determine the balance of the alleged debt" (R. 7 at ¶ 20.); 2) "Alltran failed to notify Plaintiff that if she pays the amount shown in the [Debt] Letter, an adjustment may be necessary after her check is received" (*Id.* at ¶ 22.); and 3) "Alltran failed to notify Plaintiff that it would inform her before depositing a payment in the event the balance adjusted" (*Id.* at ¶ 23.). Plaintiff attempts to create these claims from the absence of safe harbor language established by the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). (*Id.* at ¶ 21; R. 20 at 2, 4-5.) She further relies on *Ingram v. Corp. Receivables, Inc.*, 2003 WL 21018650 (N.D. Ill. May 5, 2003), to support her additional required disclosures. (R. 20 at 5.)

Defendant moves to dismiss Plaintiff's complaint because Chatman fails to state an FDCPA claim upon which relief may be granted. (R. 13.) Alltran argues that it used language approved by the Seventh Circuit in *Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004), and that the FDCPA does not require the additional disclosures Plaintiff describes. (*Id.* at 2-3; R. 22 at 2-7.) Defendant further explains that the collection letter only needs to state the total amount due as of the date of the letter and that "the inclusion of a simple truism" that the amount may increase is not a violation of the FDCPA. (R. 13 at 3-4; R. 22 at 3.)

According to well-settled Seventh Circuit precedent, "[c]laims brought under the Fair Debt Collection Practices Act are evaluated under the objective 'unsophisticated consumer' standard." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014). As the Seventh Circuit has explained, "[o]n the one hand, the unsophisticated consumer may be 'uninformed, naive, or trusting,' but on the other hand the unsophisticated consumer does possess[ ] rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence and is capable of making basic logical deductions and inferences." *Id.* at 273–74 (citation and internal quotation marks omitted); *see also Boucher v. Fin. Sys. of Green Bay, Inc.*, ___ F.3d ___, 2018 WL 443885, *2 (7th Cir. Jan. 17, 2018). The Seventh Circuit, however, has explicitly stated that "as a matter of law, [a court] shall not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation" under the unsophisticated consumer standard. *McMillan v. Collection Prof'l Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Dismissal at the motion to dismiss stage is "only appropriate in cases involving statements that plainly, on their face, are not misleading or deceptive." *Boucher*, 2018 WL 443885 at *2 (citations and quotations omitted).

## I. Neither § 1692g(a)(1) Nor the Seventh Circuit Require the *Miller* Safe Harbor Language

In *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, the plaintiff filed suit against two law firms engaging in debt collection, alleging a violation of § 1692g(a)(1) of the FDCPA. The district court granted summary judgment for the defendants on the ground that they were collecting a business—not a consumer—debt, and thus the debt letter fell outside the scope of the FDCPA. *Miller v. Echevarria*, 1999 WL 637150 (N.D. Ill. Aug. 13, 1999), *rev'd sub nom. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). On appeal, the Seventh Circuit addressed this issue, ruling that the FDCPA

5

applied to the case and that the law firms violated § 1692g(a)(1). *Miller*, 214 F.3d 872. Further, the court held that a changing debt balance did not excuse compliance with the statute. *Id*.

Critically, the Seventh Circuit provided the following safe harbor language that debt collection agencies could use without fear of running afoul of § 1692g(a)(1) of the FDCPA:

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800– [phone number].

*Miller*, 214 F.3d at 876. The Seventh Circuit explained that this formulation was not the only acceptable form of debt amount notice under the FDCPA. *Ibid*. Specifically, the Seventh Circuit stated: "Of course we do not hold that a debt collector *must* use this form of words to avoid violating the statute; but if he does, and (to repeat an essential qualification) does not add other words that confuse the message, he will as a matter of law have discharged his duty to state clearly the amount due." *Ibid*. (emphasis in original).

The Seventh Circuit has since reiterated that the *Miller* safe harbor language is not required for a debt collection agency to comply with § 1692g(a)(1) of the FDCPA. *See, e.g.*, *Boucher*, 2018 WL 443885 at *4 ("Debt collectors are not *required* to use this language [from *Miller*]." (emphasis in original)); *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 680 (7th Cir. 2007) ("The fact that the letter in this case does not adopt the [*Miller*] language of the safe harbor is of no consequence…. Although the safe harbor was offered in an attempt both to bring predictability to this area and to conserve judicial resources, it is compliance with the statute, not our suggested language, that counts." (citations omitted)). The language in *Miller* simply provides an example of language in a debt collection letter that is acceptable under § 1692g(a)(1) of the FDCPA.

As stated by the Seventh Circuit in both the original opinion as well as numerous cases afterwards, the *Miller* language is not mandatory. The only requirement comes from the text of § 1692g(a)(1) itself, which demands that a dunning letter state "the amount of the debt." 15 U.S.C. § 1692g(a)(1). Thus, to the extent Plaintiff argues that she has a claim because the Debt Letter does not contain the precise language in *Miller*, her argument fails.

**II.     *Miller* Safe Harbor Language Did Not Create Additional Required Disclosures**

Plaintiff attempts to create a claim based on the Debt Letter's failure to contain specific *Miller* safe harbor language. (R. 7 at ¶ 20-23; R. 20 at 2, 4-5.) Chatman argues that Alltran's Debt Letter runs afoul of § 1692g(a)(1) because it does not contain the following sentence: "Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection." (R. 20 at 2 (Plaintiff emphasizing this sentence in her quotation from *Miller*).) From this sentence in *Miller*, Chatman attempts to read in the following as FDCPA required disclosures: a collector must inform a debtor 1) how to determine the balance of the alleged debt; 2) that an adjustment may be necessary if and after the debtor pays the amount shown in the letter; and 3) that it will inform the debtor of the adjusted balance before depositing a payment.

The Seventh Circuit, however, did not create additional disclosures beyond those required by the statute when it formulated the safe harbor language in *Miller*. *See Williams*, 505 F.3d at 680 ("[C]ompliance with the statute, not our suggested language, … counts." (citations omitted)). Section 1692g(a)(1) merely demands that a dunning letter state "the amount of the debt." 15 U.S.C. § 1692g(a)(1).

Other courts have also found that the *Miller* language does not create additional disclosure requirements. In *Acik v. I.C. Sys., Inc.*,[2] 640 F. Supp. 2d 1019 (N.D. Ill. 2009), for example, the plaintiff argued that the debt collection agency's dunning letter[3] ran "afoul of section 1692g because it fail[ed] to (1) reference the possible need for an adjustment; (2) state that ICS would inform Acik of a need for an adjustment before depositing his check; and (3) state that for further information as to the debt amount, Acik may contact ICS." *Id.* at 1031. Chatman's claims about an adjustment disclosure (her second and third arguments) are identical to Acik's first and second arguments.

The court in *Acik* agreed with the defendant that "the safe-harbor language of *Miller* is advisory only" and found that "ICS did the bare minimum required by the statute." *Ibid*. The dunning letter in *Acik* stated the total amount due, including the principal, interest, and other charges, on the date that the letter was sent, as required by *Miller*. *Ibid.* (citing *Miller*, 214 F.3d at 875). Despite the plaintiff's arguments, the *Acik* court did not read in any additional mandatory disclosures from the *Miller* safe harbor language.

The Court also declines to read into *Miller* any additional disclosures above those required by § 1692g(a)(1). Neither the statute nor Seventh Circuit precedent support Plaintiff's theories of how Defendant violated § 1692g(a)(1) of the FDCPA.

---

[2] Both parties emphasize the procedural posture of the cases upon which they rely and often attempt to distinguish them on this ground. (*See, e.g.*, R. 20 at 5-6; R. 22 at 4-6.) The *Acik* decision was a summary judgment opinion while in this case, the Court must rule on a motion to dismiss. The *Acik* court, however, applied the statute to the debt collection letter and did not rely on any external evidence in reaching its decision. *Acik*, 640 F. Supp. 2d at 1023 ("In this matter, Acik puts forth no extrinsic evidence and relies solely on what is apparent from the face of the collection letter."). Here, the Court relies on the First Amended Complaint and the Debt Letter, attached by Plaintiff to her complaint as Exhibit C. Plaintiff needs to show that she has a legitimate claim on its face, but does not have to prove her case. The reasoning of *Acik* remains instructive.

[3] The letter in *Acik* included this disclosure: "Your delinquent account has been turned over to this collection agency. The amount reflected above is the amount you owe as of the date of this letter. This amount may change due to interest or charges added to the account after the date of this letter." *Acik*, 640 F. Supp. 2d at 1022.

Plaintiff relies heavily on the ruling in *Ingram v. Corp. Receivables, Inc.*, 2003 WL 21018650 (N.D. Ill. May 5, 2003).[4] (R. 20 at 5.) She contends that the *Ingram* court found that a debt collection letter did "not comply with this 'safe harbor' formula established by the Seventh Circuit for cases 'where the amount varies from day to day.' " *Ingram*, 2003 WL 21018650 at *3 (denying defendant's motion to dismiss plaintiff's § 1692g(a)(1) claim). Further, the collection letter "did not contain language informing Mr. Ingram that the $1,622.43 amount may increase by the time he chose to pay…the alleged debt, or that if he paid the stated amount, [the debt collection agency] might inform him that greater payment was a requirement." (R. 20 at 5 (quoting *Ingram*, 2003 WL 21018650 at *3).) Chatman emphasizes that those disclosures were also absent from the Debt Letter. (R. 20 at 5.)

Even if *Ingram* were binding on this Court, the reasoning would not save Plaintiff's argument. While the *Ingram* court did comment that the language in the debt collection letter did not conform to the *Miller* safe harbor language and discussed particular deficiencies as compared to the *Miller* model disclosure paragraph, it went on to say that "*Miller* made clear that the 'safe harbor' language was just that: a safe harbor, and not a statutory requirement." *Ingram*, 2003 WL 21018650 at *3. The *Ingram* court further noted that "courts within this district have found that various ways of stating the amount of the debt have satisfied Section 1692g(a)(1), even though not precisely tracking the safe harbor language of *Miller*." *Id*. (citing *Jolly v. Shapiro*, 237 F. Supp. 2d 888, 889, 891-9 (N.D. Ill. 2002) (granting summary judgment in favor of a debt collector which sent a collection letter that complied with the safe harbor formulation,

---

[4] The letter at issue in *Ingram* stated in all-capital letters: "THE ABOVE ACCOUNT HAS BEEN PLACED WITH THIS OFFICE FOR COLLECTION. THE BALANCE INCLUDES THE PRINCIPAL AMOUNT DUE AND MAY INCLUDE INTEREST AND ALL LATE CHARGES OR OTHER PENALTIES, IF APPLICABLE, UNDER THE DEFAULT PROVISIONS OF YOUR CONTRACT WITH THE CREDITOR. YOU MAY WISH TO CONSULT THE DEFAULT PROVISIONS OF YOUR CONTRACT TO CONFIRM THESE ADDITIONAL CHARGES, IF ANY." *Ingram*, 2003 WL 21018650 at *2.

except that it stated the amount due as of some date other than the date of the collection letter); *Taylor*, 210 F. Supp. 2d at 1003 (granting judgment on the pleadings for a debt collector which sent a collection letter stating the total balance due, including the amounts attributable to principal, interest and other charges, and further stated that the balance "may be periodically increased due to the addition of accrued interest or other charges as provided in your agreement with the creditor")).

The *Ingram* court itself noted that the debt collection letter in that case did "not expressly state as of what date that amount was due" and further did not state if the balance included other charges. *Id*. at *2. It denied the motion to dismiss on these grounds. Unlike the *Ingram* letter, the Debt Letter includes both disclosures: the Debt Letter states that the amount owed is as of the date of the letter and breaks down the balance due between principal, interest, and other charges. Chatman's reliance on *Ingram* fails.

### III. Alltran's Debt Letter Meets the Unsophisticated Consumer Standard

Ultimately, the Debt Letter fulfills the requirement of § 1692g(a)(1) and satisfies the unsophisticated consumer standard applied to such cases by the Seventh Circuit. An unsophisticated consumer who received the Debt Letter with the total current balance, broken down by principal, interest, collection cost, and fees and other non-collection charges, would know "the amount of debt owed," as required by § 1692g(a)(1) of the FDCPA. *See also Miller*, 214 F.3d at 875–76 ("[S]tate the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent."). An unsophisticated consumer, who reads "collection notices with added care," would read the amount owed and the date of the letter, and understand that this amount was "correct as of the date of this letter," as the text at the bottom clarifies. *Gruber*, 742 F.3d at 273-74.

Further, an unsophisticated consumer would not be confused reading that "Until paid in full, interest may continue to accrue on your account." As Defendant notes, the Seventh Circuit held in *Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004), that the truism that a debt account balance may increase because of interest as provided in the creditor agreement was not confusing in the debt collection letter at issue in that case.[5] *Taylor*, 365 F.3d at 574-75. In *Taylor*, debtors brought two separate actions (*Taylor v. Cavalry Inv., LLC*, 210 F. Supp. 2d 1001 (N.D. Ill. 2002) and *Schletz v. Acad. Collection Serv., Inc.*, 2003 WL 21196266 (N.D. Ill. May 15, 2003)) against their creditors, claiming violations of the FDCPA. The district court granted the collector's motion for judgment on the pleadings in *Taylor*,[6] finding that the text of the collection letter did not violate § 1692g(a)(1) because it stated the total balance due and the text of the letter did not confuse this message. *Taylor*, 210 F. Supp. 2d 1001. On appeal, the Seventh Circuit affirmed, ruling that the truism "your account balance may be periodically increased due to the addition of accrued interest or other charges as provided in your agreement with your creditor," paired with a clear statement of the principal balance, the interest due, and the total balance due, did not violate the FDCPA. *Taylor*, 365 F.3d at 574-75. Like any unsophisticated consumer who has a "rudimentary knowledge about the financial world," Chatman knew, learned or should have asked how interest works and how it would apply to her debt when taking out her loan. *Gruber*, 742 F.3d at 273-74.

---

[5] The debt letter at issue in *Taylor* provided the total balance (broken down by principal, interest, and other charges), and also stated in all-capital letters: "YOUR ACCOUNT BALANCE MAY BE PERIODICALLY INCREASED DUE TO THE ADDITION OF ACCRUED INTEREST OR OTHER CHARGES AS PROVIDED IN YOUR AGREEMENT WITH YOUR CREDITOR." *Taylor*, 210 F. Supp. 2d at 1003.

[6] The parties dispute the procedural standing of *Taylor*. The *Taylor* case involved a motion for judgment on the pleadings while the *Schletz* case involved a summary judgment motion. The Court notes that federal courts apply the same standard to a 12(b)(6) motion to dismiss as they do to a Rule 12(c) motion for judgment on the pleadings.

Lastly, the Debt Letter states: "Please refer to the original loan documents for interest rate and accrual information." Chatman as the unsophisticated consumer is reasonably intelligent, and is "capable of making basic logical deductions and inferences." *Gruber*, 742 F.3d at 273-74. She would understand that she could check her loan documents for more information, as directed. Likewise, an unsophisticated consumer who is given the debt collection agency's contact information would understand how to follow up. She could easily deduce or infer that she could contact Alltran through the various means provided in the Debt Letter, from addresses to telephone numbers. *See Williams*,[7] 505 F.3d at 679 ("Under a natural reading, the language conveys, even to an unsophisticated consumer, that interest will accrue after the letter is sent and therefore that the consumer should call to find out the "*exact* payout balance." (emphasis in original)).

Accepting all of Plaintiff's alleged facts as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff fails to state a claim under FDCPA 1692g(a)(1) under which relief can be granted. The Court, therefore, grants Defendant's motion and dismisses this case without prejudice.

---

[7] The letter at issue in *Williams* provides in part: "The balance may not reflect the exact amount of interest which is accruing daily per your original agreement with your creditor. Contact us to find out your exact payout balance." *Williams*, 505 F.3d at 677 (affirming the district court's grant of summary judgment because a debt collection letter comported with the FDCPA's requirements).

**CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion to dismiss.  The Court also grants Plaintiff leave to file a Second Amended Complaint by February 23, 2018, if she believes that she can articulate a claim consistent with this Opinion and her Rule 11 obligations.

**Dated:** February 7, 2018                    **ENTERED:**

                                                                                  _____
                                                                                  AMY J. ST. EVE
                                                                                  United States District Court Judge